UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN D. KOELBEL,<br><br>                    Plaintiff,<br><br>          v.<br><br>ROBERT J.C. IRVINE, PAUL BAZELEY,<br>PETER D. NICKERSON, BLUE SKIES<br>AIR, LLC, an Oregon limited liability<br>company, JEFF ABBOTT d/b/a Abbott<br>Aircraft Services,<br><br>                    Defendants. | Case No. 2:11-CV-038-EJL-REB<br><br>**REPORT AND RECOMMENDATION** |

On July 19, 2011, this case was referred to the undersigned for all pretrial matters (Dkt.

20).  Currently pending before the Court are Defendants Paul Bazeley's Motion to Dismiss for

lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Dkt. 5) and Defendant Jeff

Abbott's Motion to Dismiss for Lack of Personal Jurisdiction and/or Inconvenient Forum (Dkt.

13).  Defendant Robert J.C. Irvine's joinder in Bazeley's motion (Dkt. 7) will be treated as a

separate motion to dismiss, on the same grounds.

## I. BACKGROUND

In October 2002, Plaintiff John D. Koelbel ("Koelbel") purchased a Pratt & Whitney

**REPORT AND RECOMMENDATION - 1**

radial airplane engine, model R1830-92, serial number 137679 (the "Engine") for $22,100.00.

Compl., ¶ 11 (Dkt. 1).  During December 2002, Koelbel installed the Engine on the left wing of

Defendant Robert Irvine's ("Irvine") airplane, a 1937 Douglas DC3A registered with the Federal

Aviation Administration ("FAA") as N18121 (the "Airplane"), at a cost to Koelbel of $7,465.45.

*Id.* at ¶ 12.  The installation occurred at Pearson Field in Vancouver, Washington.  *Id.* at ¶ 13.

Koelbel alleges that Irvine did not pay him for the Engine or installation but promised Koelbel a

credit for $29,565.45 and further discounted the purchase price of the Airplane if Koelbel

purchased it.  *Id.*  Koelbel further alleges that Irvine promised that upon the sale of the Airplane

to a third party, Koelbel would recover his expenses for the Engine and installation.  *Id.*  Koelbel

contends these promises were made in person and in telephone calls.  *Id.*

Also in December 2002, Koelbel offered to purchase the Airplane from Irvine for

$100,000, excluding the installed Engine, provided that Irvine would share the $100,000 with the

Airplane's prior owner, Neil Rose ("Rose").[1]  *Id.* at ¶ 36.  Before Irvine accepted, Koelbel

rescinded the offer and placed a stop payment on the check he had given Irvine.  *Id.*

Some years later, on or about September 11, 2007, Irvine sold the Airplane to Defendant

Blue Skies Air ("Blue Skies"), an Oregon LLC, which is owned and operated by Defendant Peter

Nickerson ("Nickerson").  *Id.* at ¶¶ 14-15.  Koelbel alleges that the sale was arranged by

Defendant Paul Bazeley ("Bazeley"), as an agent for Irvine.  *See id.* at ¶ 16.  Bazeley, however,

contends that as the sole member of Aerometal International, LLC ("Aerometal"), he was hired

---

[1]  Koelbel also alleges that Irvine promised to share any proceeds from the sale of the Airplane to a third party with Rose, as Rose sold the Airplane to Irvine for $14,000, drastically below the estimated market value of approximately $130,000.  Compl., ¶ 13.  Rose has assigned his claim against Irvine to Koelbel.  *Id.* at ¶ 37.

**REPORT AND RECOMMENDATION - 2**

to perform an inspection and restoration work on the Airplane and then flew the airplane from Washington State to Aurora, Oregon. *See* Mem. in Supp. of Mtn. to Dismiss, pp. 2-3 (Dkt. 5-1).

Koelbel alleges that on or about January 5, 2008, he attempted to contact Irvine about their agreement. Koelbel says he did not receive a response and thereafter was informed by persons at Pearson Field that the Airplane was no longer located there. Compl., ¶ 19. Koelbel then attempted to file a security agreement on the Engine with the FAA in favor of ASI Group d/b/a Aviation Services Int'l ("ASI"), a sole proprietorship owned by Koelbel, in order to protect his ownership of the Engine. *Id*. at ¶ 20. Koelbel alleges that the security agreement was not accepted for filing because it was incorrectly deemed to also list the Airplane, and not just the left engine, as collateral. *Id*. at ¶ 21. Koelbel says he only learned the Airplane had been sold when he was informed by the FAA that the last registered owner was Blue Skies. *Id*.

Koelbel visited the state airfield in Aurora, Oregon in August 2008 and was shown the Airplane by Bazeley. *Id*. at ¶ 23. Koelbel alleges that the Engine was still mounted on the left wing of the Airplane and that he recognized the Engine to be his even though the "data plate" had been removed from the Engine. *Id*. Koelbel further contends that Bazeley informed him that the right wing engine had "blown" and been traded to Defendant Jeff Abbott ("Abbott") for a more powerful radial engine, a Pratt and Whitney model 1830-94. *Id*. It is alleged that Blue Skies subsequently traded the Engine to Abbott for a similar Pratt and Whitney engine. *Id*.

After Koelbel's visit to the Aurora airfield, Koelbel contends that Abbott confirmed that he had the Engine at his facility as a trade-in and said that he would not process the Engine until the ownership issue was resolved. *Id*. at ¶ 25. Koelbel further alleges that Abbott stated that the trade-in value of the left wing engine was close to Koelbel's original cost, although the trade-in

**REPORT AND RECOMMENDATION - 3**

value for the right wing engine was minimal.  Abbott also told Koelbel that it appeared the data plates on the two engines had been switched.  *Id*.

Koelbel sent letters to various individuals involved with the matter, including demand letters to Abbott and Irvine requesting return of the Engine.  *Id*. at ¶¶ 26-29.  Koelbel alleges that in a letter dated March 15, 2009, Irvine offered to coordinate the release of the Engine upon verification that Koelbel had removed any and all liens or encumbrances against himself, Blue Skies and Nickerson.  *Id*. at ¶ 30.

Then, on or about July 14, 2009, Koelbel states his attorney received a letter from Blue Skies threatening a lawsuit in the State of Oregon for slander of title if Koelbel did not remove his security agreement filing with the FAA.  *Id*. at ¶ 31.  A lawsuit was then filed on September 14, 2009 in the Superior Court for Clark County Washington by Blue Skies asking the court to declare Koelbel's security agreement on the Engine to be invalid and void.  *Id*. at ¶ 32; Leatham Decl., Ex. A (Dkt. 11-1).  Koelbel's motion to dismiss for lack of personal jurisdiction in that case was denied on March 11, 2010.  *Id*.

Koelbel alleges that due to personal circumstances involving his ailing mother he was unable to attend to the Washington case and default judgment was entered against him on June 23, 2010, awarding a money judgment and attorney fees.  *Id*. at ¶ 33; Leatham Decl., Ex. B (Dkt. 11-1).  Blue Skies registered the judgment in Idaho and filed a judgment lien on Koelbel's house in St. Maries, Idaho.  *Id*.  Blue Skies also submitted the default judgment to the FAA to clear the cloud on the title to the Airplane which has prevented Koelbel from filing a security agreement on the Engine.  *Id*. at ¶ 34.

Koelbel seeks to recover upon the following claims: breach of contract, fraud and

**REPORT AND RECOMMENDATION - 4**

negligent misrepresentation against Defendant Irvine; and conspiracy to defraud, bad faith and unjust enrichment against all Defendants.

## II.  REPORT

### A.   The Law of Personal Jurisdiction

In a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burdenof demonstrating that jurisdiction is appropriate.  *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).  The Court must take the plaintiff's uncontroverted allegations as true and conflicts between the parties over statements in affidavits are resolved in plaintiff's favor.  *Id.*

There is no applicable federal statute governing personal jurisdiction.  Rather, the law of the state in which the district court sits applies.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 1990).  Because Idaho's long-arm statute, codified in Idaho Code § 5-514, allows a broader application of personal jurisdiction than the Due Process Clause, the Court need look only to the Due Process Clause to determine personal jurisdiction.  *See Wells Cargo, Inc. v. Transp. Ins. Co.*, 2009 WL 4907026, * 2 (D. Idaho 2009).[2]  Thus, under Idaho

---

[2]  In *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987), the Ninth Circuit determined that the Idaho legislature, in adopting Idaho Code § 5-514, "intended to exercise all the jurisdiction available to the [s]tate of Idaho under the Due Process Clause of the United States Constitution." *Lake*, 817 F.2d at 1420.  The Idaho Supreme Court had so held, and continued to so hold for a few years after the *Lake* decision was rendered.  *See Houghland Farms v. Johnson*, 119 Idaho 72, 803 P.2d 978 (Idaho 1990).  More recently, however, the Idaho Supreme Court has, without commenting on this precedent, instituted a two-part test for resolving long-arm jurisdiction questions.  The Court first looks at whether the defendant's conduct falls within the terms of the statute, and then looks to see whether exercising jurisdiction would comport with the Due Process Clause.  In two cases, the Idaho Supreme Court has held that the defendant's conduct did fall within Idaho Code § 5-514, but that jurisdiction could not be exercised consistently with the Due Process Clause.  *See e.g.*, *Smalley v. Kaiser*, 950 P.2d 1248 (Idaho 1997); *Saint Alphonsus v. State of Washington*, 852 P.2d 491 (Idaho 1993).  These decisions imply that Idaho Code § 5-

law, the jurisdictional analysis and federal due process analysis are the same.  *See id.*

The exercise of personal jurisdiction over a defendant comports with federal due process if the defendant "has certain minimum contacts with the relevant forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted).  Sufficient minimum contacts can result in general or specific jurisdiction.  *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001).  General jurisdiction exists where the defendant's activities in the forum "are substantial, continuous and systematic."  In contrast, specific jurisdiction applies if a defendant's "less substantial contacts with the forum give rise to the cause of action before the court."  *See id.*  Koebel has argued the existence of general jurisdiction only as to Defendant Abbott.  However, there simply is nothing in the record to support any finding of "substantial, continuous and systematic" activities by Abbott in regard to Idaho.  Accordingly, if there is personal jurisdiction as to any one or more of the Defendants, it must be in the form of specific jurisdiction.

The Ninth Circuit analyzes specific jurisdiction according to a three-prong test:

> (1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

---

514 reaches beyond the limits of due process, and that the Idaho Supreme Court must use the Due Process Clause to rein in the statute's grasp.  Thus, the interpretation of Idaho Code § 5-514 in *Lake* appears no longer accurate.  The result, however, is the same - the Due Process Clause sets the limit, but the Idaho Supreme Court's new two-part test recognizes that the reach of the statute is not identical with the reach of the Due Process Clause.

**REPORT AND RECOMMENDATION - 6**

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Yahoo! Inc.*, 433 F.3d at 1205-06 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).  Plaintiff bears the burden of satisfying the first two prongs of the test. *See Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007).  If Plaintiff succeeds in satisfying the first two prongs, the burden shifts to the Defendant to "'present a compelling case' that the exercise of jurisdiction would not be reasonable."  *See id.* (quoting *Schwarzenegger*, 374 F.3d at 802).

> **1.      Purposeful Availment or Direction**

The first requirement of "purposeful availment" or "purposeful direction" ensures that a defendant is not haled into court because of random, fortuitous or attenuated contacts or based upon unilateral contacts of third parties.  *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985). Purposeful availment and purposeful direction, although often used interchangeably, apply to two different situations, particularly in the Ninth Circuit, with the purposeful availment analysis applying in contract cases and the purposeful direction analysis being used in tort cases.  *See Schwarzenegger*, 374 F.3d at 802.

Jurisdiction premised upon purposeful availment requires a finding that the defendant has performed some affirmative conduct, such as executing or performing a contract, which allows or promotes the transaction of business in the forum.  *Id.*; *Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001)  However, an individual's contract with a nonresident defendant alone does not automatically establish sufficient minimum contacts for the purpose of asserting personal jurisdiction.  *Id.*  In *Doe*, the Ninth Circuit noted that prior negotiations, contemplated future

**REPORT AND RECOMMENDATION - 7**

consequences, terms of the contract and the parties' course of dealing must all be evaluated.  *Id.*

Jurisdiction premised upon purposeful direction requires a finding that the defendant's actions outside the forum state are directed at the forum, such as distribution in the forum state of goods originating elsewhere.  *Schwarzenegger*, 374 F.3d at 803.  In *Dole Food Co. v. Watts*, the Ninth Circuit applied the "effects" test for assessing personal jurisdiction in intentional tort cases.  303 F.3d 1104, 1111 (9th Cir. 2002).  This test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, and (3) caused harm that the defendant knew was likely to be suffered in the forum state.  *Id.*

## 2.     Relatedness

The second requirement for specific jurisdiction is that the contacts constituting purposeful availment or direction are those that give rise to the lawsuit.  *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000).  This is measured as "but for" causation; that is, personal jurisdiction is only proper where "but for" the defendant's activities in the forum, the plaintiff's injuries would not have occurred.  *Id.*

## 3.     Reasonableness

The third and final requirement shifts the burden to the defendant to contest whether the exercise of personal jurisdiction is reasonable and comports with the notions of fair play and substantial justice.  *Bancroft & Masters*, *Inc.*, 223 F.3d at 1088.  The reasonableness determination requires a court to look at seven factors:

> (1) the extent of the defendant's purposeful injection into the forum state; (2) the burden on the defendant in defending the forum; (3) the extent of the conflict with the sovereignty of defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's

**REPORT AND RECOMMENDATION - 8**

interest in convenient and effective relief; and (7) the existence of
an alternative forum.

*Id.*

## B.   The Application of Personal Jurisdiction Standards to the Defendants

### 1.   Defendant Irvine

Koelbel's claims against Irvine stem from (a) the alleged agreement that upon the sale of

the Airplane to a third party, Irvine would pay Koelbel for the Engine and its installation; and (b)

Irvine's subsequent failure to pay Koelbel when the Airplane was sold.  There is dispute in the

record over how and where this alleged agreement was formed.  Koelbel states that the oral

agreement was made in "numerous phone conversations with Irvine from [Koelbel's] home in

[Idaho]" and that over the next several years he contacted Irvine "from time to time from his

home in [Idaho] to inquire as to the status of the airplane."  (Koelbel provides no detail about the

particulars of such alleged conversations, and the inference from his statement is that such

conversations were initiated by Koelbel.)  Irvine contends it was Koelbel who approached him

about purchasing the Airplane and all conversations took place in Washington.  *Cf.* Koelbel

Decl., ¶¶ 7-8 (Dkt. 9-1) *with* Irvine Decl., ¶ 3 (Dkt. 7-1).

To be clear, Irvine's declaration is referring to the initial transaction and agreement

between Koelbel and Irvine for the purchase of the Airplane that was later rescinded.  It does not

address the transaction at issue for payment to Koelbel upon sale of the Airplane to a third party.

These are the only allegations that touch upon Idaho.[3]  All other relevant actions that occurred

---

[3]  Koelbel does allege that Irvine reached out to Koelbel's attorney in Idaho and offered
to help settle the claim to the Engine.  However, this activity is not related to Koelbel's claims
against Irvine and cannot support personal jurisdiction.

**REPORT AND RECOMMENDATION - 9**

between Koelbel and Irvine took place in Washington, including the installation of the Engine on the Airplane.

Even when the facts are viewed favorably towards Koelbel as the non-movant, this was a "one-shot" contract between Koelbel and Irvine, and a lone transaction concerning one item is not sufficient to establish purposeful availment.  *See Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (finding that a "one-shot" contract that did not involve any continuing commitments by the defendants in the forum state did not establish purposeful availment); *Doe*, 248 F.3d at 924 (individual's contract with nonresident defendant alone cannot automatically establish minimum contacts).  The evidence does not show that Irvine reached out to Koelbel in Idaho and purposefully availed or directed his actions to Idaho.  Koelbel cannot establish that "but for" Irvine's actions in Idaho, these claims would have not have arisen.[4]

The Court concludes that the jurisdictional deficiencies could not be cured by amendment.  Even if it was established that Irvine did make telephone calls to, or otherwise orchestrate his actions toward, Koelbel in Idaho, it remains that this is still a lone transaction that is insufficient for establishing personal jurisdiction.

---

[4] Koelbel also contends that Irvine's joinder (Dkt. 7) in Bazeley's Motion to Dismiss was not timely filed.  Koelbel claims that Irvine's attorney, Steve Leatham of Vancouver, Washington, accepted service on February 20, 2011, therefore a responsive pleading was due by March 14, 2011.  Irvine's joinder was filed June 2, 2011.  Irvine states in his declaration (Dkt. 7-1) that he was served on May 12, 2011 and there is no evidence of acceptance of service or return of service on February 20, 2011, as claimed by Koelbel.  From the record, it appears Irvine was served on May 12, 2011.  Additionally, a personal jurisdiction defense is not waived if it is not asserted in the time frame set forth in Rule 12(a), which deals only with the time at which a pleading must be served and is silent on the question of waiver.  Rule 12(h) merely dictates waiver of a defense if the defense is not made by motion or in the responsive pleading, whenever it may be served.  *See* 5C Charles Alan Wright & Arthur C. Miller, Federal Practice and Procedure § 1391 (3d ed. 2004).

**REPORT AND RECOMMENDATION - 10**

2.      Defendant Bazeley

Bazely is only connected to Idaho by Koelbel's allegation that Bazeley returned Koelbel's telephone calls seeking information about the Engine.  Bazely's other connections to the facts of this case occurred in Washington and Oregon – he performed restoration work on the Airplane in Washington and flew the Airplane from Washington to Oregon.  There was no contract between Bazeley and Koelbel.  Bazeley did not direct any activities toward Idaho.

Nonetheless, Koelbel argues that Bazeley acted as an agent for Irvine in arranging the sale of the Airplane to Blue Skies.  However, as with Irvine, Koelbel relies upon facts that are not those giving rise to the claims asserted by Koelbel.  The unilateral act of a third party, such as Irvine, in entering into an agreement with Koelbel cannot justify personal jurisdiction over Bazeley.  In other words, the acts of the purported principal are not a basis to assert personal jurisdiction in Idaho over the purported agent, even if there were sufficient facts to justify personal jurisdiction over the principal.  *See Knutsen v. Cloud*, 124 P.3d 1024, 1027 (Idaho 2005) (finding that Idaho's long-arm statute does not permit the exercise of personal jurisdiction over an agent even if the principal is subject to jurisdiction).

Here, no evidence exists that Bazeley purposefully availed or directed himself to Idaho.  Further, because the Court finds that the personal jurisdiction deficiencies of the complaint could not be cured by amendment, the Court will not allow leave to amend.

3.      Defendant Abbott

Abbott did not conduct any activities with respect to this case in Idaho.  All his actions took place in Oklahoma, other than returning a few telephone calls to Koelbel who resides in Idaho.  There is no evidence that Abbott purposefully availed or directed himself to Idaho with

**REPORT AND RECOMMENDATION - 11**

respect to the claims alleged against him in this matter.

Abbott does admit to doing business with one vendor in Idaho, unrelated to this matter. Koelbel argues that this contact is sufficient to assert personal jurisdiction over Abbott, either under Idaho's long-arm statute or under a general jurisdiction analysis.

Idaho Code § 5-514 provides that a person is subject to the jurisdiction of this state as to any cause of action *arising from* the transacting of business within Idaho.  While Abbott admits transacting some business in Idaho, this case did not arise from those transactions.  With regard to whether this contact satisfies general jurisdiction, the contacts must be so "substantial" or "continuous and systematic" that they approximate physical presence.  *See Bancroft & Masters, Inc. v. Augusta Nat. Ins.*, 223 F.3d 1082 (9th Cir. 2000).  Abbott's admission that he "on occasion" buys and sells parts with one vendor in the state does not amount to the "substantial" contacts that are required to establish general jurisdiction.  As with Bazeley, the personal jurisdiction deficiencies with respect to Abbott cannot be cured by amendment and the Court will not grant leave to amend.[5]

## III.  RECOMMENDATION

For the foregoing reasons, it is hereby recommended that the District Court **GRANT** Defendant Bazeley's Motion to Dismiss (Dkt. 5), **GRANT** Defendant Irvine's Motion to Dismiss (Dkt. 7) and **GRANT** Defendant Abbott's Motion to Dismiss (Dkt. 13).

Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a

---

[5] Koelbel argues that Abbott's motion was not timely filed.  Abbott was served on March 25, 2011 and filed his motion on June 14, 2011.  *See* Heida Decl., Ex. 1 (Dkt. 18-1).  As noted above, in footnote 4, a Rule 12 personal jurisdiction defense is not automatically waived when it is not asserted within the time frame set forth in Rule 12(a).  Therefore, Abbott's motion is not untimely.

**REPORT AND RECOMMENDATION - 12**

Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty pages . . . within fourteen (14) days . . ., unless the magistrate or district judge sets a different time period."  Additionally, the other party "may serve and file a response, not to exceed ten pages, to another party's objections within fourteen (14) days after being served a copy thereof."



DATED:  **October 19, 2011**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

**REPORT AND RECOMMENDATION - 13**