UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN D. KOELBEL,<br><br>                Plaintiff,<br><br>     v.<br><br>ROBERT J.C. IRVINE, PAUL BAZELEY, PETER D. NICKERSON, BLUE SKIES AIR, LLC, an Oregon limited liability company, JEFF ABBOTT d/b/a Abbott Aircraft Services,<br><br>                Defendants. | Case No. 2:11-CV-038-EJL-REB<br><br>**REPORT AND RECOMMENDATION** |

On July 19, 2011, this case was referred to the undersigned for all pretrial matters (Dkt. 20). Currently pending before the Court are Defendants Peter D. Nickerson and Blue Skies Air, LLC's Motion to Dismiss (Dkt. 31) for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), for insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5), and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).[1]

---

[1] In his response, Plaintiff Koelbel agrees with Defendant Nickerson that the Court lacks personal jurisdiction over him and stipulates to his Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2). Plaintiff additionally withdraws his Bad Faith claim. He does, however, object and respond to the remainder of Defendant Blue Skies Air, LLC's Motion to Dismiss as discussed below.

**REPORT AND RECOMMENDATION - 1**

**REPORT**

**I. FACTUAL BACKGROUND**

In October 2002, Plaintiff John D. Koelbel ("Koelbel") purchased a Pratt & Whitney radial airplane engine, model R1830-92, serial number 137679 (the "Engine") for $22,100.00. Compl., ¶ 11 (Dkt. 1).  During December 2002, Koelbel installed the Engine on the left wing of Robert Irvine's ("Irvine")[2] airplane, a 1937 Douglas DC3A registered with the Federal Aviation Administration ("FAA") as N18121 (the "Airplane"), at a cost to Koelbel of $7,465.45.  *Id.* at ¶ 12.  The installation occurred at Pearson Field in Vancouver, Washington.  *Id.* at ¶ 13.  Koelbel alleges that Irvine did not pay him for the Engine or installation but promised Koelbel a credit for $29,565.45 and further discounted the purchase price of the Airplane if Koelbel purchased it. *Id*.  Koelbel further alleges that Irvine promised that upon the sale of the Airplane to a third party, Koelbel would recover his expenses for the Engine and installation.  *Id*.  Koelbel contends these promises were made in person and in telephone calls.  *Id*.

Also in December 2002, Koelbel offered to purchase the Airplane from Irvine for $100,000, excluding the installed Engine, provided that Irvine would share the $100,000 with the Airplane's prior owner, Neil Rose ("Rose").[3]  *Id*. at ¶ 36.  Before Irvine accepted, Koelbel rescinded the offer and placed a stop payment on the check he had given Irvine.  *Id*.

Some years later, on or about September 11, 2007, Irvine sold the Airplane to Defendant

---

[2] This Defendant was dismissed on November 15, 2011 (Dkt. 27).

[3] Koelbel also alleges that Irvine promised to share any proceeds from the sale of the Airplane to a third party with Rose, as Rose sold the Airplane to Irvine for $14,000, drastically below the estimated market value of approximately $130,000.  Compl., ¶ 13.  Rose assigned his claim against Irvine to Koelbel.  *Id*. at ¶ 37.

**REPORT AND RECOMMENDATION - 2**

Blue Skies Air ("Blue Skies"), an Oregon LLC, which is owned and operated by Defendant Peter Nickerson ("Nickerson"). *Id*. at ¶¶ 14-15. Koelbel alleges that the sale was arranged by Paul Bazeley ("Bazeley"),[4] as an agent for Irvine. *See id*. at ¶ 16.

Koelbel alleges that on or about January 5, 2008, he attempted to contact Irvine about their agreement. Koelbel says he did not receive a response and thereafter was informed by persons at Pearson Field that the Airplane was no longer located there. Compl., ¶ 19. In an attempt to protect his alleged ownership of the Engine, Koelbel then attempted to make a security agreement filing on the Engine with the FAA, in favor of ASI Group d/b/a Aviation Services Int'l ("ASI"), a sole proprietorship owned by Koelbel. *Id*. at ¶ 20. Koelbel alleges that the security interest filing was rejected because it was incorrectly deemed to also list the Airplane, and not just the Engine, as collateral. *Id*. at ¶ 21. Koelbel says he only learned the Airplane had been sold when he was informed by the FAA that the last registered owner was Blue Skies. *Id*.

Koelbel visited the airfield in Aurora, Oregon in August 2008 and was shown the Airplane by Bazeley. *Id*. at ¶ 23. Koelbel alleges that the Engine was still mounted on the left wing of the Airplane and that he recognized the Engine to be his even though the "data plate" had been removed from the Engine. *Id*. Koelbel further contends that Bazeley informed him that the right wing engine had "blown" and been traded to Jeff Abbott ("Abbott")[5] for a more powerful radial engine, a Pratt and Whitney model 1830-94. *Id*. It is alleged that Blue Skies subsequently traded the Engine to Abbott for a similar Pratt and Whitney engine. *Id*.

---

[4] This Defendant was dismissed on November 15, 2011 (Dkt. 27).

[5] This Defendant was dismissed on November 15, 2011 (Dkt. 27).

**REPORT AND RECOMMENDATION - 3**

After Koelbel's visit to the Aurora airfield, Koelbel contends that Abbott confirmed that he had the Engine at his facility as a trade-in and said that he would not do anything further with the Engine until the ownership issue was resolved. *Id*. at ¶ 25. Koelbel further alleges that Abbott stated that the trade-in value of the left wing engine was close to Koelbel's original cost, although the trade-in value for the right wing engine was minimal. Abbott also told Koelbel that it appeared the data plates on the two engines had been switched. *Id*.

Koelbel sent letters to various individuals addressing his claim to the Engine, including demand letters to Abbott and Irvine requesting return of the Engine. *Id*. at ¶¶ 26-29. Koelbel alleges that in a letter dated March 15, 2009, Irvine offered to coordinate the release of the Engine upon verification that Koelbel had removed any and all liens or encumbrances against himself, Blue Skies and Nickerson. *Id*. at ¶ 30.

Then, on or about July 14, 2009, Koelbel states his attorney received a letter from Blue Skies threatening a lawsuit in the State of Oregon for slander of title if Koelbel did not remove his security agreement filing with the FAA. *Id*. at ¶ 31. A lawsuit was then filed on September 14, 2009 in the Superior Court for Clark County, Washington by Blue Skies asking the court to declare Koelbel's security agreement on the Engine to be invalid and void. *Id*. at ¶ 32; Leatham Decl., Ex. A (Dkt. 11-1). Specifically, the complaint sought a declaratory judgment that the "filed security agreements are invalid" and ordering plaintiff "to withdraw the security agreements, and . . . file the appropriate paperwork with the FAA to clear the cloud on plaintiff's title to its aircraft." Leatham Decl., Ex. A at ¶ 17. The complaint alleged that Blue Skies had "no monetary or other obligation" to Koelbel. *Id*. at ¶ 15. Blue Skies also alleged a claim for slander of title for Koelbel's false assertion that he somehow had a security interest in Blue

**REPORT AND RECOMMENDATION - 4**

Skies' airplane and Blue Skies' had to incur legal fees and other expenses in an effort to clear its title. *Id*. ¶¶ 19-20.  Koelbel filed motion to dismiss for lack of personal jurisdiction in that case which was denied on March 11, 2010.  Complaint (Dkt. 1) ¶ 32.

Koelbel alleges that due to personal circumstances involving his ailing mother he was unable to further attend to the Washington case.  Default judgment was entered against him on June 23, 2010, awarding a money judgment and attorney fees.  *Id*. at ¶ 33; Leatham Decl., Ex. B (Dkt. 11-1).  Specifically, the default judgment stated that the "two security agreements executed by John Koelbel on or about December 27, 2007, and filed with the Federal Aviation Administration on or about January 10, 2008, and February 1, 2008, are hereby declared invalid and void from their inception."  Leatham Decl., Ex. C (Dkt. 11-1).  The default judgment also awarded $2,773.50 in damages as of a result of Koelbel's slander of title to Blue Skies' aircraft. *Id*.  Blue Skies registered the judgment in Idaho and filed a judgment lien on Koelbel's house in St. Maries, Idaho.  *Id*.  Blue Skies also submitted the default judgment to the FAA to clear the cloud on the title to the Airplane, which has prevented Koelbel from perfecting a security interest in the Engine.  *Id*. at ¶ 34.

## II.  PROCEDURAL BACKGROUND

The Complaint in this case was filed on February 4, 2011.  Defendants Paul Bazeley, Robert Irvine and Jeff Abbott all filed motions to dismiss (Dkts. 5, 7, and 13) which were granted for lack of personal jurisdiction on November 15, 2011 (Dkt. 27).  On June 7, 2012, Defendants Blues Skies and Nickerson filed the instant motion to dismiss for lack of personal jurisdiction, improper service, failure to state a claim and seeking dismissal on the grounds of res judicata (Dkt. 31).  In his opposition to that motion, Koelbel conceded that the Court did not

**REPORT AND RECOMMENDATION - 5**

have personal jurisdiction over Defendant Nickerson, and that he failed to state a claim for bad faith in his Complaint. Accordingly, Koelbel voluntarily dismissed those claims. Therefore, the only remaining claims are the conspiracy to defraud and unjust enrichment claims raised against Defendant Blue Skies. *See* Compl. ¶¶ 48-51, 56-57.

### III.  PERSONAL JURISDICTION

In a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). The Court must take the plaintiff's uncontroverted allegations as true and conflicts between the parties over statements in affidavits are resolved in plaintiff's favor. *Id*.

There is no applicable federal statute governing personal jurisdiction. Rather, the law of the state in which the district court sits applies. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 1990). Because Idaho's long-arm statute, codified in Idaho Code § 5-514, allows a broader application of personal jurisdiction than the Due Process Clause, the Court need look only to the Due Process Clause to determine personal jurisdiction. *See Wells Cargo, Inc. v. Transp. Ins. Co.*, 2009 WL 4907026, * 2 (D. Idaho 2009).[6] Thus, under Idaho

---

[6] In *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987), the Ninth Circuit determined that the Idaho legislature, in adopting Idaho Code § 5-514, "intended to exercise all the jurisdiction available to the [s]tate of Idaho under the Due Process Clause of the United States Constitution." *Lake*, 817 F.2d at 1420. The Idaho Supreme Court had so held, and continued to so hold for a few years after the *Lake* decision was rendered. *See Houghland Farms v. Johnson*, 119 Idaho 72, 803 P.2d 978 (Idaho 1990). More recently, however, the Idaho Supreme Court, without commenting on its prior decision in *Lake*, adopted a two-part test for resolving long-arm jurisdiction questions. The Court first looks at whether the defendant's conduct falls within the terms of the statute, and then looks to see whether exercising jurisdiction would comport with the Due Process Clause. In at least two reported cases, the Idaho Supreme Court has held that the defendant's conduct did fall within Idaho Code § 5-514, but that jurisdiction could not be

**REPORT AND RECOMMENDATION - 6**

law, the jurisdictional analysis and federal due process analysis are the same. *See id*.

The exercise of personal jurisdiction over a defendant comports with federal due process if the defendant "has certain minimum contacts with the relevant forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted). Sufficient minimum contacts can result in general or specific jurisdiction. *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001). General jurisdiction exists where the defendant's activities in the forum "are substantial, continuous and systematic." In contrast, specific jurisdiction applies if a defendant's "less substantial contacts with the forum give rise to the cause of action before the court." *See id*. Koelbel argues there is specific jurisdiction over Blue Skies.

The Ninth Circuit analyzes specific jurisdiction according to a three-prong test:

> (1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

---

exercised consistently with the Due Process Clause. *See e.g.*, *Smalley v. Kaiser*, 950 P.2d 1248 (Idaho 1997); *Saint Alphonsus v. State of Washington*, 852 P.2d 491 (Idaho 1993). These decisions imply that Idaho Code § 5-514 reaches beyond the limits of due process, and that the Idaho Supreme Court must use the Due Process Clause to rein in the statute's grasp. The result, however, is the same - the Due Process Clause sets the limit, but the Idaho Supreme Court's new two-part test recognizes that the reach of the statute is not identical with the reach of the Due Process Clause.

**REPORT AND RECOMMENDATION - 7**

*Yahoo! Inc.*, 433 F.3d at 1205-06 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).  Plaintiff bears the burden of satisfying the first two prongs of the test.  *See Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007).  If Plaintiff succeeds in satisfying the first two prongs, the burden shifts to the Defendant to "'present a compelling case' that the exercise of jurisdiction would not be reasonable."  *See id*. (quoting *Schwarzenegger*, 374 F.3d at 802).

Blue Skies seeks to dismiss the case against it on the grounds that the Court does not have personal jurisdiction over it.  Blue Skies contends that the complaint lacks any allegations that it has performed any actions in the forum state, it has not entered into any contracts with Koelbel, nor was it foreseeable that any of Blue Skies' activities would have an effect in Idaho.  Blue Skies posits that the damage alleged by Koelbel stems from Irvine's alleged failure to pay Koelbel, not from Blue Skies' purchase of the airplane.  Koelbel counters that personal jurisdiction exists because Blue Skies filed a lien against Koelbel's home in Idaho, to which Blue Skies responds that the lien is not the basis for Koelbel's claim against it, and therefore cannot be the basis for conferring jurisdiction over Blue Skies.  *See Bancroft & Masters, Inc. v. Augusta National Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (the claim must arise out of or result from defendant's forum-related activities).

Finally, Koelbel argues that when Blue Skies filed its Washington default judgment as a foreign judgment in the First Judicial District Court for Benewah County (Heida Decl, ¶ 9, Ex. AAA), it availed itself of the courts of this state and performed an act for the purpose of realizing a pecuniary gain.  Therefore, Koelbel contends Blue Skies is subject to personal jurisdiction.

**REPORT AND RECOMMENDATION - 8**

The Court finds that there is no personal jurisdiction in this Court over Blue Skies on the facts of this case. Blue Skies must have conducted activities either in or directed at the forum state that *give rise* to the claim alleged by Koelbel. The only allegations of forum-related activity are that Blue Skies registered a lien against Koelbel's home on July 26, 2010. The claims in the Complaint, in contrast, arise from Blue Skies' purchase of an airplane from Irvine that allegedly contained the Engine owned by Koelbel. Koelbel alleges that Blue Skies engaged in a conspiracy to defraud him of his property by purchasing the Airplane and ignoring his ownership of the Engine and that Blue Skies was unjustly enriched in doing so. None of these alleged actions that give rise to Koelbel's claims against Blue Skies occurred in Idaho. Moreover, the sale of the Airplane occurred in 2007, three years before Blue Skies filed its judgment in Idaho. There is simply no discernable way in which Koelbel's claims against Blue Skies *arose out of* Blue Skies' actions in filing a lien in Idaho in 2010. Accordingly, the case should be dismissed against Blue Skies for lack of personal jurisdiction.

## IV.  RES JUDICATA

The Court also finds that the claims against Blue Skies are barred by the doctrine of res judicata. Blue Skies argues that the default judgment entered in Washington precludes Plaintiff from bringing this action before the Court. The preclusive effect accorded a state court judgment in a subsequent federal court proceeding is determined by reference to the laws of the rendering state. 28 U.S.C. § 1738, *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985), *Trujillo v. County of Santa Clara*, 775 F.2d 1359, 1363 (9th Cir. 1985). Under Washington law, res judicata applies when a prior judgment has four touchstones of identity with a subsequent action. *Kirkava v. Webber*, 716 P.2d 916, 918 (Wash. Ct. App. 1986).

**REPORT AND RECOMMENDATION - 9**

There must be an identity of (1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made. *Id*. Under Washington law, default judgments are considered judgments on the merits. *Id*.

The Court finds that this record contains the "four identities" which bar this action under res judicata. The subject matter of both action is the same, the Douglas DC3A aircraft, and an engine, specifically a Pratt and Whitney R1830-92, serial number 137679.

To determine whether the causes of action are the same, the Court must look at: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. *Rains v. State of Wash.*, 674 P.2d 165, 168 (Wash. Sup Ct. 1983). The prior judgment decided the dispute over whether Plaintiff's attempted security interest lien created a cloud on Blue Skies' title to the aircraft, thereby slandering it, and ordered that the security agreements filed by Plaintiff were invalid and void from their inception. This later lawsuit, filed by Koelbel, seeks payment for the Engine from Blue Skies, which on its face would impair the interests established in the prior judgment. The same evidence would be presented in both actions, as the two lawsuits both involve a controversy over the same right, the ownership of the Engine. Lastly, the two actions arise from the same transactional nuclear of facts–Plaintiff's installation of an Engine on the Airplane, the Airplane's subsequent sale from Irvine to Blue Skies, and Plaintiff's alleged right to payment.

The last elements required for res judicata are also readily apparent. The plaintiff in the Washington state action was Blue Skies Air, LLC, who is the Defendant in this case. In the

**REPORT AND RECOMMENDATION - 10**

Washington case, one of the defendants was Koelbel, the Plaintiff in this matter. No argument can be made that the parties are "qualitatively" different.

Moreover, Koelbel could have asserted a counterclaim in the Washington case asserting the same facts and legal claim as he makes here. Indeed, under Washington court rules (as with Idaho and federal court rules), he was required to do so in order to preserve that claim.[7] If a party does not assert a compulsory counterclaim, that party is barred from asserting that claim as an independent claim or as a counterclaim in any other action. *See Marasca v. Heerlen*, 697 P.2d 1023 (Wash. Ct. App. 1985).

As discussed above, Plaintiff's claim in this action, for conspiracy to defraud and unjust enrichment, arises out of the same transaction or occurrence that was the subject of Blue Skies' lawsuit in Washington state, that being Plaintiff's alleged right to payment from Blue Skies for the Engine in the Airplane that Blue Skies purchased from Irvine. Blue Skies' complaint in the Washington state action alleged that it owed no monetary obligation to Koelbel. Therefore, Plaintiff's claims were compulsory counterclaims in the Washington state action and he is barred from bringing those action here.

/

/

/

/

/

---

[7] Washington Civil Rule 13(a) requires parties to state as a counterclaim any claim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."

**REPORT AND RECOMMENDATION - 11**

/

## **RECOMMENDATION**

For the foregoing reasons, it is hereby recommended that the District Court **GRANT** Defendants Nickerson and Blue Skies' Motion to Dismiss (Dkt. 31).[8]

Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty pages . . . within fourteen (14) days . . ., unless the magistrate or district judge sets a different time period."  Additionally, the other party "may serve and file a response, not to exceed ten pages, to another party's objections within fourteen (14) days after being served a copy thereof."

DATED:  **February 25, 2013**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

---

[8]  As to Blue Skies' request for sanctions, if it still intends to seek fees and costs following this decision, Blue Skies shall file a separate motion seeking the same under the applicable rules.

**REPORT AND RECOMMENDATION - 12**